IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : No. 22-cr-192 (BAH) |
| v. | : |
| JENNIFER HORVATH, | : |
| *Defendant*. | : |

## DEFENDANT'S SENTENCING MEMORANDUM

On January 6, 2021, Jennifer Horvath walked into the United States Capitol. She entered through an open door. While inside, she did not break, damage, or steal any property; hurt or injure anyone; go into any private office space or proceed to the well of the House or the Senate. Ms. Horvath was not involved in planning or leading any of the activities that the crowd was engaged in on January 6, 2021, nor was she associated with any of the groups reported to be responsible for aspects of what occurred that day. Ms. Horvath knows that, notwithstanding these facts, her mere participation and entry into the U.S. Capitol played a role in the events that transpired. The images of what happened on January 6, 2021 will remain with her for the rest of her life and her association with that day is etched in stone, with dozens of stories and articles on the internet about her arrest.

Ms. Horvath is remorseful for those injured and for the damage that occurred that day. Ms. Horvath's remorse is not measured merely by her words, but rather by her expeditious and sincere acceptance of responsibility in this case, without any delay or unnecessary requests for additional discovery or needless motion practice.

Ms. Horvath cannot change the past; she can only learn from it as she strives to live a life worthy of forgiveness.

Ms. Horvath has faced significant hardships in her life. While it is not an excuse for her conduct on January 6, 2021, it puts into context the person that she is and explains why she is an appropriate candidate for a straight probation sentence.

Ms. Horvath left her verbally abusive mother at the age of 13 as a result of her mother's mental health issues. She was kicked out of her father's home at 15, given a conflict with her stepmother. She has a ninth-grade education, and has worked minimum wage jobs her entire life to support herself and her two children from prior relationships. On January 6, 2021, she traveled to Washington, DC with her then boyfriend Glen Croy, who supported her during periods of unemployment. Ms. Horvath ended her relationship with Mr. Croy, and lives on her own and struggles to make ends meet. Notwithstanding that she did not have the best childhood or the benefits that most of us take for granted, her criminal history is limited to traffic related alcohol offenses almost twenty-years ago.

Consistent with U.S. Probation's recommendation, this is not a case warranting incarceration. As discussed below, focusing on the mitigating factors that separates her conduct from the conduct of her former partner Mr. Croy on January 6, 2021, Ms. Horvath respectfully asks this Court for a sentence of probation.

**FACTUAL BACKGROUND**

As set forth in her Statement of Offense (D.E. 21), prior to January 6, 2021, Ms. Horvath and her then boyfriend, Mr. Croy, picked up Terry Lynn Lindsey in Piqua, Ohio and they all drove together to Washington D.C. to attend a political rally on January 6, 2021. On that morning, Lindsey, Croy, and Horvath went to a political rally at the Ellipse on the National Mall. Following the rally, Ms. Horvath, Croy, and Lindsey walked with a crowd to the U.S. Capitol Grounds. Ms. Horvath, Croy, and Lindsey stood on the West Lawn part of the U.S. Capitol Grounds for approximately one hour as law enforcement officers engaged with the crowd and deployed tear gas. At approximately

2:11 p.m., Ms. Horvath climbed through metal scaffolding to get from the West Lawn to the Upper West Terrace area of the U.S. Capitol Grounds. Ms. Horvath, Croy, and Lindsey then entered the U.S. Capitol Building at approximately 2:18 p.m. through the Senate Wing Door. While inside the U.S. Capitol Building, Ms. Horvath took a picture of Lindsey and Croy in front of a bust of Abraham Lincoln entitled, "Lincoln the Legislator." After *Croy* was told to leave by United States Capitol Police Officers, Croy, Horvath, and Lindsey exited the U.S. Capitol Building at approximately 2:37 p.m. through the Memorial Door after being inside the U.S. Capitol Building for approximately 20 minutes. Once outside the U.S. Capitol Building, Ms. Horvath, Croy, and Lindsey remained on the grounds of the U.S. Capitol Building for approximately 40 to 45 minutes. At approximately 3:21 p.m., Ms. Horvath, Croy, and Lindsey re-entered the U.S. Capitol Building through the Rotunda doors. Lindsey, Croy, and Ms. Horvath then entered the Rotunda before being forced to exit the U.S. Capitol Building again through the Memorial Door at approximately 3:29 p.m.

## ARGUMENT

Ms. Horvath now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the United States Probation Office, Ms. Horvath faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B misdemeanor, the Sentencing Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

Pursuant to 18 U.S.C. § 3553 (and specifically those portions of it that are applicable to this misdemeanor, non-guideline sentence), factors this Court is to consider in imposing the sentence, which should be sufficient, but not greater than necessary, to comply with the purposes of sentencing are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

1. **The Nature and Circumstances of the Offense.**

In various sentencing memoranda concerning January 6, 2021, the Government has recognized that not all actors are equal in terms of culpability and has consequently been setting forth factors for judges to consider in relation to January 6, 2021 sentences,[1] including: (i) whether, when, and how the defendant entered the Capitol building; (ii) whether the defendant engaged in any violence or incited violence; (iii) whether the defendant engaged in any acts of destruction; (iv) the defendant's reaction to acts of violence or destruction; (v) whether during or after the riot, the defendant destroyed evidence; (vi) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (vii) the defendant's statements in person or on social media; (viii) whether the defendant cooperated with, or ignored, law enforcement; and (ix) whether the defendant otherwise exhibited evidence of remorse or contrition. We submit that two additional factors should also be considered: (x) whether the defendant was involved with planning or coercing

---

[1] *See United States v. Reeder*, No. 21-cr-166, Gov't Sent. Mem. at 6-7 (D.E. 26).

the events of January 6, 2021;[2] and (xi) whether the defendant timely offered to accept responsibility for her or her involvement and offered to enter a plea of guilty at a time that would have avoided the use of limited judicial, investigative, and prosecutorial resources.[3]

Ms. Horvath did not force entry into the Capitol and entered through a door. This factor weighs in favor of her. Ms. Horvath did not engage or incite violence, which shows both the third and fourth factors also weigh in her favor. In fact, as part of Mr. Croy's plea agreement, the Government approved a Statement of Offense that stated the following: "There is no evidence [Croy] or Terry Lindsey were violent or destructive on the grounds or inside the Capitol." *See United States v. Croy*, 21-cr-00162-BAH, Statement of Offense, ¶ 8 (D.E. 30).

Ms. Horvath did not destroy any evidence. Again, this fifth factor weighs strongly in her favor. Ms. Horvath was in the Capitol for a limited period of time, 28 minutes in total, and did not travel to or enter any rooms or offices in the Capitol or the Senate or House Chamber, which weighs in her favor.[4] While she did reenter the Capitol, it was her partner Croy who was advised to leave the first time as he exited the men's bathroom (of which Ms. Horvath did not receive that instruction).

Ms. Horvath was also not involved with planning or coercing the events of January 6, 2021. As to the final factor, we suggest that the Court consider that Ms. Horvath repeatedly, from the outset,

---

[2] The Government has itself pointed to this as a relevant factor. *See*, *e.g.*, *United States v. Morgan*, No. 21-cr-164, Gov't Sent. Mem. at 6 (D.E. 22).

[3] *See*, *e.g.*, *United States v. Bustle*, No. 21-cr-238, Gov't Sent. Mem. at 6 (D.E. 38) ("The government also notes that from the outset, through her attorney, Joshua Bustle expressed a desire to plead guilty, acknowledge her conduct, and promptly resolve her case. When recommending an appropriate sentence, the government gives ***significant*** weight to the defendant's early resolution of this case.") (emphasis added).

[4] *See United States v. Morgan*, No. 21-cr-00164, Gov't Sent. Mem. at 6 (D.E. 22) (identifying location in the Capitol as a relevant factor and questioning whether the defendant entered specific areas).

expressed a desire to accept responsibility, showed significant remorse for her conduct, and an interest to promptly resolve this case. The Government has elsewhere, in other January 6, 2021 cases, acknowledged that this is entitled to "significant weight."[5]

**2.      The History and Characteristics of the Defendant.**

As set forth in the PSR (D.E. 28, ¶ 76), Ms. Horvath has an extremely limited criminal history arising from traffic related alcohol matters, the most recent of which was *sixteen* years ago. If the Sentencing Guidelines did apply to her offense of conviction, she would have no criminal history points. USSG § 4A1.2(c)(2). Accordingly, she would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Ms. Horvath has held life-long employment with no history of drug abuse or violence, absent occasional marijuana use that stopped two years ago. These circumstances and Ms. Horvath's history and characteristics led the United States Probation Office, upon its review of the record, to recommend a non-incarceration sentence. U.S. Probation's reasons for its position are compelling:

> The defendant is 48 years old. Her prior contact with the criminal justice system consists of two alcohol-related offenses, for which she was placed on community supervision. Ms. Horvath reported a dysfunctional upbringing. Her parents divorced and the defendant resided with her mother but had regular visitation with her father. She stated that her mother was 'very strict and crazy,' and suffers from severe anxiety. The defendant relocated to Dallas, Texas, at age 13, to reside with her father; however, she did not have a good relationship with her stepmother and was kicked out of her father's residence at age 15 and has resided on her own since that time. . . . She did note that her mother was verbally abusive prior to the defendant leaving her mother's residence. The defendant is single and has two adult children. . . . Ms. Horvath withdrew from school while in the ninth grade and did not report other educational pursuits. . . .
>
> With respect to deterrence, community safety (incapacitation), and punishment, Ms. Horvath has remained compliant with her pretrial supervision and terms of her release. She does not appear to present a danger to the community and goals of sentencing may be accomplished through a noncustodial sentence of probation supervision. Rehabilitation does not appear to be a particular concern for this defendant at the present time.

---

[5] *See United States v. Bustle*, No. 21-cr-238, Gov't Sent. Mem. at 6 (D.E. 38).

D.E. 29. at 2. This too supports a more lenient sentence.

3.    **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Promote Respect for the Law.**

The events of January 6, 2021 were both serious and tragic, yet, as reflected above, not every actor that day has equal culpability. Is it appropriate to treat those who enter and then leave the same as those who entered and stole or damaged property, those who organized and incited others to act, those who went into sensitive or private areas, or even worse, those who threatened or injured law enforcement? To ask these questions is to answer them. The appropriate consideration under this statutory factor is ***not*** whether the events of January 6, 2021 were serious (because there is no dispute that they were). Instead, the appropriate consideration is to weigh and judge *each defendant's* activities and involvement in the events of that day, and we submit that consideration of that conduct relative to the factors set forth above, and articulated by the Government in other sentencing memoranda related to January 6, 2021 cases, must be considered in that regard.

Over 800 individuals have been charged in connection with the events of January 6, 2021. Some were charged with felonies, while others with misdemeanors. Each of these cases involves a wide range of conduct occurring before, during, and after January 6, 2021 by the particular defendant. Each of these cases should be judged based on the defendant's conduct and not the conduct of others.

Given these factors and for the reasons discussed above, a non-custodial sentence is appropriate here.

4.    **Adequate Deterrence (Specific and General).**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. *See* 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Specific deterrence is obtained for the defendant by the prosecution and conviction itself. The personal and

7

reputational consequences Ms. Horvath has suffered are more than sufficient to discourage her from engaging in similar conduct, especially when Ms. Horvath has led an otherwise crime-free life.

As for general deterrence, several observations can be made. *First*, the prosecution itself (and the publicity of conviction) all serve as a significant general deterrence. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985) (observing that any prosecution has a "general deterrence value"); *United States v. Gamarra*, 940 F.3d 1315, 1321 (D.C. Cir. 2019) (observing that prosecution itself provides general deterrence). If that is true generally, it is especially true here.

The misdemeanor charges in this case received national and local press.[6] There is every indication that the public condemnation of Ms. Horvath will continue for the foreseeable future. Unlike almost any other federal misdemeanor charge (besides other defendants in January 6 cases), no one would want to expose themselves to the level of vitriol that is being attributed to January 6 defendants — regardless of the level of their participation or the severity of their particular charges. The point of this observation is that the publicity involved in these cases is itself providing significant general deterrence unlike any run of the mill federal misdemeanor case. It might also be observed that Google and the news articles on this matter will outlive Ms. Horvath. When whatever sentence this Court imposes is completed, the headlines will remain. January 6, 2021 will be a day that lives in infamy, and, for those who entered the Capitol, it will be a lifelong blemish on their record.

*Second*, while the events of January 6, 2021 were unacceptable by any measure, and must be deterred from ever occurring again, it would be inappropriate to treat every participant in that event

---

[6] *See, e.g.*, https://www.cbsnews.com/colorado/news/jennifer-horvath-girlfriend-wes-croy-capitol-riot-january-6-2021-insurrection-charges/, last visited October 23, 2022; https://www.9news.com/article/news/crime/colorado-woman-charged-capitol-riot/73-a72c14f2-a52e-4640-af3a-865a309671a9, last visited October 23, 2022; https://www.denverpost.com/2022/05/04/jennifer-horvath-charged-jan-6-insurrection/, last visited October 23, 2022; https://www.denver7.com/news/local-news/colorado-woman-arrested-charged-with-being-inside-us-capitol-on-jan-6, last visited October 23, 2022.

equally, without regard to the circumstances of their involvement, and without regard to the cooperation and acceptance of responsibility they exhibited afterwards.

Indeed, as observed by the district court in the Supreme Court's decision in *Gall v. United States*, probation "rather than an act of leniency, is a substantial restriction of freedom." 552 U.S. 38, 44 (2007) (punctuation omitted). The *Gall* Court emphasized that the defendant would have to "comply with strict reporting conditions." *Id.* The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in her life, such as where to live or work, which are prized liberty interests, without first seeking authorization from her Probation Officer or, perhaps, even the Court." *Id.* If this Court believes probation is necessary, given the facts of this case as weighed by the statutory factors, a probationary sentence in this case is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553.

**5.     Sentencing Disparities.**

It is difficult to find any particular set of facts that is right on point, but the most appropriate starting point for evaluating a sentencing disparity is this Court's sentence of her prior partner, Mr. Croy, for whom this Court sentenced him to 36 months' probation with 14 days in a reentry center, to be followed by location monitoring for ninety days.

Ms. Horvath's actions on January 6, 2021, as different from those of Croy, warrant a sentence without two weeks in a reentry center and with location monitoring. For example, unlike Croy and his friend Terry Lindsey, who engaged law enforcement, as shown below, Ms. Horvath stood a distance back from their contact with law enforcement:



As shown below, with the red circle, Ms. Horvath is pictured a distance back during the exchange above.



Moreover, discovery has established that Croy was specifically told by Capitol Police to leave and return and Ms. Horvath was not aware of that instruction. While the Government initially sought to have Ms. Horvath acknowledge such awareness in her Statement of Offense that she was advised to leave, she appropriately refused, because it was not accurate and the Government modified her statement of offense to reflect that revision.[7] So unlike Croy who disobeyed an instruction to leave, Ms. Horvath entered and exited and returned, not in violation of an express prohibition, but generally as part of her parading and demonstration in and around the U.S. Capitol. According to the Government's Statement of Offense, it appears that Ms. Horvath's total time inside the Capitol was 28 minutes.

Also, unlike Ms. Horvath, Mr. Croy had "previously been arrested for several offenses that range in their severity," including, assaultive conduct and child endangerment.[8]

---

[7] It is the unfortunate practice of the Government in January 6 related matters that after the parties' seek to resolve disputes as to the factual record that forms the Statement of Offense — which constitutes the offense conduct for the purposes of sentencing — the Government then proceeds to file a sentencing memorandum that discusses matters outside the Statement of Offense, including, some that were specifically removed from the Government's draft Statement of Offense, at the Defendant's request, and for good reason. Having just read the Government's Sentencing Memorandum (D.E. 30) and the information discussed therein, the Defendant intends to submit a separate response to certain of the factual representations contained therein.

[8] *See United States v. Croy*, 21-cr-00162-BAH, Gov't Sent. Mem. at 18 (D.E. 46) ("In 1999, the defendant was convicted of a misdemeanor assault. In 2000, he was convicted of a misdemeanor traffic violation. In 2005, Glenn Croy was convicted of a felony violation of Marijuana Cultivation. The defendant has also been convicted of traffic infractions. In addition to these convictions, the defendant's criminal history also shows he was arrested on September 16, 1995 in Butte, Montana for an assault, resulting in a 6-month suspended sentence, though no further information is available. As well, shortly afterwards, the defendant was arrested on November 12, 1995 for Disorderly Conduct and Engaging the Welfare of a Child – 1st Violation, for which he was sentenced to a 10-day suspended sentence and $120 fine, as part of what appears to be a group of people assaulting a single individual.").

Finally, Ms. Horvath has severe financial constraints, has little if any savings, and according to the U.S. Probation Office, has no open bank accounts or lines of credit. This motivated undersigned counsel to first request a remote sentencing and then for the Marshals to provide Ms. Horvath the costs of traveling to the District for her sentencing, which the Court denied.[9] Residential reentry, which will limit Ms. Horvath's ability to work as a waitress during that time period (which does not have 9 to 5 hours), would further exacerbate her current and severe financial constraints. Moreover, Ms. Horvath has been in complete compliance with release conditions and GPS monitoring appears greater than necessary for Ms. Horvath to comply with a probationary sentence for her petit misdemeanor offense, her first offense in the last sixteen years.

## CONCLUSION

Here, a 12-month sentence of probation (along with the agreed-to restitution of $500 to the United States of America) is both an appropriate and just outcome for this case, an event that will remain with Ms. Horvath for the remainder of her life as her participation in January 6, 2021 is etched permanently on social media.

Dated: October 24, 2022                    Respectfully submitted,

s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile: (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Jennifer Horvath*

---

[9] While Ms. Horvath was able to travel to Washington, DC for January 6, 2021, she traveled with her former partner Croy, without financial constraint to her. Having moved on from him in her life — and for good reason — Ms. Horvath's travel and lodging for her sentencing is solely her financial responsibility, which has already financially burdened her in this matter.